IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: ERNESTINE RANDLE | ) | |
| | ) | |
| ERNESTINE RANDLE, | ) | |
| | ) | |
| Plaintiff, | ) | No. 07 C 631 |
| | ) | |
| v. | ) | |
| | ) | |
| WILLIAM T. NEARY, United States Trustee, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER REGARDING U.S. TRUSTEE NEARY'S APPEAL FROM THE BANKRUPTCY COURT'S DECISION

JAMES F. HOLDERMAN, Chief Judge:

Debtor Ernestine Randle ("Randle") filed a voluntary Chapter 7 petition in the United States Bankruptcy Court for the Northern District of Illinois on May 23, 2006. In response, United States Trustee, William T. Neary, ("the Trustee") filed a motion to dismiss Randle's petition under 11 U.S.C. § 707(b)(2), arguing that granting Randle a discharge of her debts would be an abuse of Chapter 7 of the Bankruptcy Code. Bankruptcy Judge Carol A. Doyle denied the Trustee's motion to dismiss, and the Trustee now appeals that decision (Dkt. No. 1). Because this appeal presents an issue of first impression for the district courts, the court held oral argument on the appeal on June 19, 2007. For the reasons stated below, the court affirms the judgment of the Bankruptcy Court.

## LEGAL STANDARDS

This court reviews the Bankruptcy Court's findings of fact for clear error. *In re Heartland Steel, Inc.,* 389 F.3d 741, 743-44 (7th Cir. 2004); *Matter of Greenig*, 152 F.3d 631,

1

633 (7th Cir. 1998). Legal conclusions are reviewed de novo. *In re Heartland Steel, Inc.,* 389 F.3d at 743-44; *Matter of Greenig*, 152 F.3d at 633.

The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), effective October 17, 2005, amended provisions of the Bankruptcy Code, including 11 U.S.C. § 707(b)(2), which is the statute at issue in this appeal. Section 707(b)(2) applies a "Means Test," which measures a debtor's presumed ability to repay her debts in the 60 months following the filing of her bankruptcy petition. 11 U.S.C. § 707(b)(2). Under the means test, a debtor's filing of a bankruptcy petition is considered an "abuse" if her ability to repay her debts exceeds a certain threshold amount calculated by a mathematical equation set out in the statute. *Id.* The means test labels as an abuse any case where the debtor's "current monthly income" less statutorily specified allowable expenses would enable the debtor to pay over the course of 60 months either (1) $10,000, which is $167 a month for 60 months or (2) the greater of 25% of her nonpriority unsecured debt or $6000, which is $100 a month for 60 months. *Id.* "Current monthly income" ("CMI") is defined as "the average monthly income from all sources that the debtor receives . . . without regard to whether such income is taxable income, derived during the 6-month period"preceding the month of the bankruptcy filing. 11 U.S.C. § 101(10A).

The categories of allowable expenses which may reduce a debtor's CMI are contained in 11 U.S.C. § 707(b)(2)(A)(ii), (iii), and (iv). Relevant to this case is the category of allowable expenses for payments on secured debt set out in 11 U.S.C. § 707(b)(2)(A)(iii), which provides that:

> The debtor's average monthly payments on account of secured debts shall be calculated as the sum of —
>
> (I)   the total of all amounts scheduled as contractually due to secured creditors in each

2

> month of the 60 months following the date of the petition; and
>
> (II) any additional payments to secured creditors necessary for the debtor, in filing a plan under chapter 13 of this title, to maintain possession of the debtor's primary residence, motor vehicle, or other property necessary for the support of the debtor and the debtor's dependents, that serves as collateral for secured debts;
>
> divided by 60.

The means test also allows the deduction of amounts specified in national and local standards for certain categories of monthly expenses. 11 U.S.C. § 707(b)(2)(A)(ii).

## BACKGROUND

The issue in this case is whether Randle may deduct the amount owed on a secured debt under § 707(b)(2)(A)(iii) if she intends to surrender the collateral after filing her bankruptcy petition. Because the underlying facts in this case are not disputed, the court relies on the facts as stated in the Bankruptcy Court's December 19, 2006 opinion and the parties' briefs. *See In re Randle*, 358 B.R. 360 (Bankr. N.D. Ill. 2006). Randle filed her voluntary Chapter 7 bankruptcy petition on May 23, 2006. Along with her petition, Randle filed all the required schedules and documents under the Bankruptcy Code and Federal Rules of Bankruptcy, including her Statement of Current Monthly Income, the form for calculating the means test, Form B22A, and her Statement of Intention regarding secured debt. *Id.* at 362. Randle disclosed in Schedule A—Real Property—that she owned her residence in South Holland, Illinois, and in Schedule D—Creditors Holding Secured Claims—that her residence was secured by a first mortgage in the amount of $124,000, and that she had a first mortgage arrearage of $22,000.[1] In line 42 of her Form B22A, which tracks the language of § 707(b)(2)(A)(iii) for payments to secured

---

[1] For some reason, Randle did not disclose a second mortgage on this schedule, on which both parties acknowledge she defaulted.

creditors, Randle subtracted from her CMI her monthly mortgage payment of $1,614.98 and in line 43, her monthly mortgage arrearage of $366.67, which appears to include both her first mortgage payments and payments for her second mortgage. Randle declared in a Statement of Intention that she intended to surrender her home rather than reaffirm or redeem that debt. *Id.* After deducting the allowed expenses, Randle's Form B22A showed a negative monthly disposable income for purposes of the means test. *Id.*

As of the May 23, 2006 petition date, Randle was 16 months in default on her first mortgage, having failed to make a payment since April 2005, and 30 months in default on her second mortgage, having failed to make a payment since February 2004. (Appellant's Br. at 4). On July 12, 2006, Mortgage Clearing Corporation ("MCC"), the mortgage holder on Randle's residence, filed a motion for relief from the automatic stay with regard to Randle's residence based on Randle's failure to make her mortgage payments. (*Id.* at 5). Randle did not oppose the motion, and the Bankruptcy Court granted MCC relief from the stay on August 15, 2006. (*Id.*). Based on the relief granted, MCC was authorized to complete foreclosure and related remedies under state law. (*Id.*).

In response to Randle's petition, the Trustee filed a Statement of Presumed Abuse, alleging that the means test yielded an amount greater than the $10,000 minimum in § 707(b)(2)(A)(i). *In re Randle*, 358 B.R. at 362. To arrive at that conclusion, the Trustee, rather than using Randle's contracted-for mortgage payment as her housing expense for the means test, the Trustee substituted the standard housing deduction of $980 per month (the housing deduction in the IRS Local Standards for a debtor in Randle's position), and arrived at a calculation of $786 in monthly disposable income. That amount multiplied by 60 comes to

$46,138.20, which far exceeds the $10,000 threshold for a presumption of abuse under the means test. *Id.* According to the Trustee, Randle should be assigned the standard housing deduction instead of using her contracted-for mortgage payments because Randle has filed a Statement of her intention to surrender her house to the mortgage company for foreclosure, and the automatic stay has already been lifted with respect to her residence. *Id.*

The Trustee filed in the Bankruptcy Court a motion to dismiss Randle's petition for abuse based on his means test calculations. The Trustee asked the Bankruptcy Court to determine whether a debtor should be allowed under § 707(b)(2)(A)(iii) to deduct her contracted-for mortgage payments from her CMI when she has filed a Statement of Intention that she intends to surrender her home to the mortgage company and the automatic stay has been lifted as to her residence.

The Bankruptcy Court determined, after interpreting the statute, that § 707(b)(2)(A)(iii) permits Randle to deduct her actual mortgage payments from her CMI, even though she stated her intention to surrender her home to the mortgage company when she filed a Chapter 7 bankruptcy petition. In reaching this decision, the Bankruptcy Court based its decision first on the plain language of § 707(b)(2)(A)(iii), which says that the debtor "shall" deduct the amounts "scheduled as contractually due in each month of the 60 months following the date of the petition." The Bankruptcy Court found persuasive the lack of any conditional language in the statute regarding a debtor's intention to reaffirm, redeem or surrender collateral. *In re Randle*, 358 B.R. at 362-63. In addressing the Trustee's arguments that the Bankruptcy Court should look to Congressional intent, the Bankruptcy Court relied on the "cardinal rule" of statutory interpretation, that plain meaning of the statute is conclusive except in those rare instances where

5

the statutory language as applied produces a result at odds with the intent of Congress. *Id.* at 363. Moreover, the Bankruptcy Court in reviewing the Congressional intent found that it supports the Bankruptcy Court's interpretation. According to the Bankruptcy Court, Congress's intent behind the means test was to "create a 'mechanical' formula for presuming abuse of Chapter 7" and not submit debtors to a case by case adjustment based on individual circumstances. *Id.* at 363, 364. (citing Report of the Comm. of the Judiciary, House of Rep., to Accompany S. 256, H.R. Rep. No. 109-31, Pt. 1, p. 553, 109th Cong., 1st. Sess. (2005)). The Bankruptcy Court cited other examples of standardized or mechanical tests used throughout § 707(b)(2) to avoid reliance on individualized information in support of the interpretation of Congressional intent. *Id.* at 364. The Bankruptcy Court referred to the absence of any language differentiating between debtors based on their stated intent to redeem, reaffirm, or surrender collateral as evidence of Congressional intent to apply the means test mechanically. *Id.*

The Bankruptcy Court rejected the Trustee's linguistic interpretations of the statute as well. With regard to the effect of the word "due" in phrase "amounts scheduled as contractually due to secured creditors" in § 707(b)(2)(iii), the Bankruptcy Court recognized that, as of the date of the petition, Randle's mortgage payments were still "due" under the contract, whether or not Randle planned to make these payments in the future. *In re Randle*, 358 B.R. at 365. The Bankruptcy Court also did not consider the word "scheduled" to have the significance that the Trustee assigns it. First, the Bankruptcy Court, in considering "scheduled" as defined by the Bankruptcy Code rather than its ordinary meaning as the Trustee argues, found no bankruptcy schedule to which § 707(b)(2)(A)(iii) could refer. *Id.* Second, the Bankruptcy Court noted that Randle did list the amount of the monthly payment due under her mortgage in her Schedule J.

6

*Id.* at 366. Finally, the Bankruptcy Court found that, based on the context of the statute, the use of "scheduled" was meant to reflect its ordinary meaning when referring to installment payments that are scheduled to be paid on a monthly basis. *Id.*

The Trustee also advocated for the adoption of a forward-looking view of expenses under the means test, rather than the "mistaken" historical or backward-looking of expenses. Declining to take a forward-looking view, the Bankruptcy Court found that the statutory language of § 707(b)(2)(A)(iii) calls for a "snapshot of the debtor's obligations on the date of the petition." *Id.* Lastly, the Bankruptcy Court rejected the Trustee's argument that the Bankruptcy Court's interpretation would prevent the Trustee from performing his duty under § 704(b)(1) to review all the material filed by Randle, believing that the Trustee's duty is not relevant to the proper interpretation of § 707(b)(2)(A)(iii). *Id.*

The Trustee in appealing the decision of the Bankruptcy Court, requested and was granted oral argument because this issue has not yet been decided by a district court. That oral argument was held on June 19, 2007 to allow counsel for each side an opportunity to advocate their respective positions.

## JURISDICTION

As a threshold matter, the court addresses whether it has jurisdiction to hear this bankruptcy appeal from the denial of the Trustee's motion to dismiss for substantial abuse under 11 U.S.C. § 707(b). Under 28 U.S.C. § 158(a), a district court has jurisdiction to hear an appeal from a bankruptcy court's final judgment, order, or decree; from interlocutory orders and decrees issued under 11 U.S.C. § 1121(d) increasing or reducing the time periods referred to in § 1121; and with leave of the court, from other interlocutory orders and decrees. 28 U.S.C. § 158(a).

Typically, denials of motions to dismiss are not final, and thus appealable, orders even in the bankruptcy context. *In re Jartran, Inc.*, 886 F.2d 859, 864 (7th Cir. 1989); *see In re Salem*, 465 F.3d 767, 775 (7th Cir. 2006); *In re Vlasek*, 325 F.3d 955, 960 (7th Cir. 2003). That said, reviewing courts have taken a flexible approach to the definition of "finality" in bankruptcy cases. *See, e.g., Kilgus v. U.S. Fire Ins. Co.*, 811 F.2d 1112, 1116 (7th Cir. 1987). A bankruptcy court order will be treated as final and appealable if the judgment, order, or decree involves a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court of the United States, or involves a matter of public importance; the judgment, order, or decree involves a question of law requiring resolution of conflicting decisions; or an immediate appeal from the judgment, order, or decree may materially advance the progress of the case or proceeding in which the appeal is taken. 28 U.S.C. § 158(d)(2)(A). Orders denying dismissals of Chapter 7 cases for substantial abuse are appealable because the orders end litigation on the merits, leaving only the execution of judgment. *See* 28 U.S.C. § 158(d); *In re Koch*, 109 F.3d 1285, 1288 (8th Cir. 1997); *Matter of Christian*, 804 F.2d 46, 48 (3d Cir. 1986). Moreover, in this particular case, the split among the bankruptcy courts over application of the mean test to this issue provides greater support for treating the denial of the Trustee's motion to dismiss for substantial abuse as final. 28 U.S.C. § 158(d)(2)(A)(i), (ii). This court finds that the bankruptcy court's denial of the Trustee's motion to dismiss is a final, appealable order and this court has jurisdiction to hear the matter.

## ANALYSIS

The Trustee challenges the Bankruptcy Court's holding based on the statutory interpretation of "the total of all amounts scheduled as contractually due to secured creditors in

8

each month of the 60 months following the date of petition" from § 707(b)(2)(A)(iii) and Congressional intent. Looking first at the specific language of § 707(b)(2)(A)(iii), the Trustee argues that the Bankruptcy Court erred by giving the statutory phrase "all amounts scheduled as contractually due," referring to the amounts allowed to be deducted from the CMI, its ordinary meaning. According to the Trustee, the use of "scheduled" refers to the schedules required by the Bankruptcy Code, and the phrase "scheduled as" is for debts recorded on a debtor's bankruptcy schedules. The Trustee argues that, because collateral intended to be surrendered is not identified on the bankruptcy schedules as due or scheduled to be due in the 60-month period following the petition date, the collateral should not be calculated in the means test as an allowable expense. The Trustee sees the relevant language of "scheduled as due" as a forward-looking approach to calculating expenses that are to be paid over the 60 month period following the petition date, and not a backward looking assessment of past secured debt.

As applied to this case, the Trustee argues that Randle has explicitly stated her intent to surrender her property, and so the mortgage debt should not be scheduled as due, on her bankruptcy petition's schedules or otherwise, over the subsequent 60-month period after the date of her petition. Furthermore, the Trustee asserts that, because Randle has not paid her mortgage for at least the last six months before the filing of her petition, Randle did not actually have her mortgage payments as a secured debt expense, and Randle should not have received an allowance for the nonpayment of the monthly mortgage.

In opposition and following the Bankruptcy Court's disposition, Randle contends that there is no conditional language in § 707(b)(2)(A)(iii) that limits the expense allowance to those secured debts that the debtor reaffirms and does not intend to surrender. In support, Randle

9

points out that Congress did not include any language referring to the "Statement of Intention" and its effect on secured debt in § 707(b)(2)(A)(iii).

The United States Supreme Court and our United States Court of Appeals for the Seventh Circuit have consistently instructed us lower courts to accord statutory terms or words their ordinary, common meaning unless they are specifically defined by the statute or the statutory context requires a different definition. *See, e.g., Walters v. Metropolitan Educ. Enters., Inc.*, 519 U.S. 202, 207 (1997); *Precision Industs., Inc. v. Qualitech Steel SBQ, LLC*, 327 F.3d 537, 544 (7th Cir. 2003). "[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992) (internal quotations and citations omitted). In addition, where possible and reasonable, courts should construe two or more statutory provisions in such a way as to give effect to each and avoid conflicts between them. *Watt v. Alaska*, 451 U.S. 259, 267 (1981); *Morton v. Mancari*, 417 U.S. 535, 551 (1974).

Bankruptcy courts are split on whether § 707(b)(2)(A)(iii) permits the deduction of secured debt payments on collateral that the debtor intends to surrender, and this court found no district court opinion addressing the issue. After reviewing carefully the opinions from bankruptcy courts across the country, this court believes that according the language of § 707(b)(2)(A)(iii) its plain and ordinary meaning is the proper interpretation of and consistent with the overall context of the Bankruptcy Code. The plain language of the statute dictates that a debtor is allowed to deduct a secured debt as monthly expense even when the debtor has filed a "Statement of Intention" that the debtor plans to surrender the collateral securing the debt. In

choosing to accord the statute its plain meaning, this court rejects the alternative position advocated by the Trustee that the term "scheduled as" is a term of art to be interpreted as a reference to bankruptcy schedules.

In support of this position, the court relies on the extensive discussion by the Bankruptcy Court below as well as in *In re Nockerts*, 357 B.R. 497, 502 (Bankr. E.D. Wisc. 2006),[2] of the interpretation of the phrase "scheduled as contractually due." In *Nockerts*, the Bankruptcy Court searched the Bankruptcy Code for other uses of the phrase "scheduled as," and found that this exact phrase was only used one other time in 11 U.S.C. § 1111(a), which explicitly states:

> A proof of claim or interest is deemed filed under section 501 of this title for any claim or interest that *appears in the schedules* filed under section 521(1) or 1106(a)(2) of this title, except a claim or interest that *is scheduled as* disputed, contingent, or unliquidated."

11 U.S.C. § 1111(a) (emphasis added). As discussed in *Nockerts*, § 1111(a) refers explicitly to bankruptcy schedules before subsequently using the phrase "scheduled as" in the same sentence. From the context in § 1111(a), the phrase "scheduled as" likens back to bankruptcy schedules. *Nockerts*, 357 B.R. at 502. The context and grammatical structure of § 707(b)(2)(A)(iii) does not lead to the same result because there is no explicit discussion of bankruptcy schedules in that section of the statute. *Id.*

The Bankruptcy Court in *Nockerts* in its analysis engaged in a broader search through the Bankruptcy Code for uses of the term "scheduled" or "schedule." *Nockerts*, 357 B.R. at 502. This broader search similarly turned up two provisions that expressly meant "'listed on the

---

[2]The reasoning of the Bankruptcy Court in *Nockerts* has also been adopted by several other Bankruptcy Courts outside the Seventh Circuit. *See, e.g., In re Galyon*, No. 06-11985 WV, 2007 WL 883394, *2 (Bankr. W.D. Ok. Mar. 22, 2007); *In re Mundy*, No. 1-06-BK-875MDF, 2007 WL 620971, *3 (Bankr. M.D. Pa. Mar. 1, 2007); *In re Sorrell*, 359 B.R. 167, 185 (S.D. Ohio 2007).

11

bankruptcy schedules,'" based on citations in the statutes to 11 U.S.C. § 521(1), which explicitly discusses bankruptcy schedules. *Id.* The Bankruptcy Court in *Nockerts* additional found "two provisions that obviously do not" refer to the bankruptcy schedules, as the statutes only make sense when "schedule" and "scheduled" are given their ordinary meaning. *Id.* This search "compel[ed]" the Bankruptcy Court in *Nockerts* to conclude that, "[w]hen describing bankruptcy schedules, Congress included in the statute a reference to schedules, either directly by name or indirectly by reference to § 521," and when the "statute refers to scheduled payments," the "bankruptcy schedules are not mentioned." *Id.* In this case, the term "scheduled as," in § 707(b)(2)(A)(iii), does not cite to § 521 or mention "bankruptcy schedules," and so, based on the rules of statutory construction, this court gives the phrase "scheduled as contractually due" its ordinary and plain meaning. In addition, as the Bankruptcy Court notes, there is no bankruptcy schedule, to which § 707(b)(2)(A)(iii) could refer, upon which a debtor is required to list "all amounts contractually due to secured creditors in each month of the 60 months following the date of the petition." *In re Randle*, 358 B.R. 360, 365 (Bankr. N.D. Ill. 2006).

The language of § 707(b)(2)(A)(iii) is clear and states that the debtor's average monthly payments on account of secured debts "shall" be calculated as the sum of "the total of all amounts scheduled as contractually due to secured creditors." 11 U.S.C. § 707(b)(2)(A)(iii). This court agrees with the Bankruptcy Court's "plain meaning" approach to the language. With the word "shall," Congress signals the intent to leave the debtor, the Trustee, and the court without discretion to condition the inclusion or exclusion of specific payments on certain factors, if the payments are "scheduled as contractually due to secured creditors." *See In re Hartwick*, 359 B.R. 16, 19 (D. N.H. 2007). Moreover, giving meaning to each of the words and to the

12

overall statute, the court considers significant to the statutory construction the complete absence of any conditions placed on the relevant language "the total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of petition," 11 U.S.C. § 707(b)(2)(A)(iii), with regard to whether the debtor intends to redeem, reaffirm or surrender the collateral underlying the secured debt. *Hartwick*, 359 B.R. at 19-20; *In re Walker*, 2006 WL 1314125, *4 (Bankr. N.D. Ga. May 1, 2006).

The language "contractually due" in § 707(b)(2)(A)(iii) also undercuts the Trustee's argument that a debtor should not deduct monthly payments for property that the debtor intends to surrender. The debtor's announced intent to surrender the property does not change the contractual obligation owed by the debtor. *Gaylon,* 2007 WL 883394 at *5; *Sorrell*, 359 B.R. at 184-185. At the time of filing the petition, the debtor's "rights and duties under an otherwise enforceable prepetition contract remain, notwithstanding the collateral's surrender." *In re Haar*, No. 06 31270, 2007 WL 5212221, *5 (Bankr. N.D. Ohio Feb. 20, 2007). At the earliest, the entry of discharge extinguishes the debtor's contractual liability on debt held by secured creditors. *Walker*, 2006 WL 1314125 at *4. Furthermore, the "Statement of Intention" filed at the time of the petition is not a self-executing document, that when filed, automatically extinguishes a contract; rather it is, as titled, a statement of intention to surrender in the future. *In re Longo*, No. 06-30781, 2007 WL 836762, *4 (Bankr. D. Conn. Mar. 19, 2007). Indeed, in this case, if the property the debtor surrenders proceeds to a foreclosure sale, there may very well be a deficiency, for which the debtor will be personally liable that will increase the unsecured debt owed by the debtor to be considered in the evaluation rebutting abuse. 11 U.S.C. § 707(b)(2)(B)(iv); *Johnson v. Home State Bank*, 501 U.S. 78, 82 (1991).

In advocating that the debtor should not be allowed to deduct her first and second mortgage debts that she owes to secured creditors on property that she intends to surrender, the Trustee also argues that the means test should be interpreted to be "forward-looking." According to the Trustee, in allowing the debtor to deduct amounts scheduled as contractually due "in each month of the 60 months following the date of the petition," *see* § 707(b)(2)(A)(iii), Congress intended to capture the projected future financial state of the debtor. In the case of a debtor intending to surrender collateral, that future projection does not include payments on that surrendered collateral.

Despite the reference in the statute to the 60 months following the date of the petition, the court disagrees with the Trustee's "forward-looking" interpretation of § 707(b)(2)(A)(iii). Rather, the court affirms the treatment by Bankruptcy Court below of the statute as intending to capture a "snapshot" of the debtor's financial state as of the date the petition is filed based on the overall treatment of allowable expenses in § 707. *Randle*, 2006 WL 3734351 at *5; *see also Longo*, 2007 WL 836762 at *3; *Haar,* 2007 WL 521221 at *7; *Sorrell*, 359 B.R. at 186; *Walker*, 2006 WL 1314125 at *5. Housing and utility expenses change over the course of 5 years, yet the statute makes no mention of postpetition adjustments to the means test calculation. *Sorrell*, 359 B.r. at 186. Nor does the means test take into account any adjustments in national and local standards if those change during the 60-month period. *Walker*, 2006 WL 1314125 at *5. Singling out debt owed to secured creditors for prospective treatment would be inconsistent with the treatment of other allowable deductions. *Id.* Furthermore, the reading of the statute as a snapshot "conforms to the general tenet in bankruptcy that circumstances are to be gauged from the petition date, with the Bankruptcy Code replete with examples where any deviation

14

therefrom is made explicit." *Haar*, 2007 WL 521221 at *7.

The possibility of deficiency judgment from a foreclosure sale further undercuts the Trustee's position that the means test is forward looking. That a debtor is surrendering collateral that will then be sold at a foreclosure will not necessarily extinguish the debtor's liability. When the collateral is sold at a foreclosure sale, mortgagee-creditor retains the amount of the sale if it is less than or equal to the debt owed by the debtor on the mortgage. *Johnson v. Home State Bank*, 501 U.S. 78, 82 (1991). The creditor, however, may additionally pursue the debtor for any deficiency on the debt that the sale of the collateral did not cover as an unsecured personal liability. *Id.* Under the Trustee's forward-looking approach, there is no opportunity under the means test to account for the effect of a deficiency judgment against the debtor. Yet, only under Chapter 7 will a defaulting debtor be protected by discharge from personal liability on a deficiency for a secured debt. 11 U.S.C. §§ 524(a)(1), 727; *Johnson,* 501 U.S. at 82-83. Under Chapter 13, a debtor must pay back a percentage of his unsecured debts for a specified time, and so the unsecured debt from the deficiency would not be discharged as it is under Chapter 7. 11 U.S.C. § 1322; *see Matter of Witkowski*, 16 F.3d 739, 740 (7th Cir. 1994).

Moreover, there is a safety valve in § 707 that ensures a debtor who "passes" the means test will not be insulated from the effect of later events. *Haar*, 2007 WL 521221 at *9. The outcome of later events are considered in the totality of the circumstances test set out in § 707(b)(3). *Mundy*, 2007 WL 620971 at *5. Requiring debtors to predict the future outcome of events for the calculation of the CMI less allowable deductions would conflate the presumption of abuse test with the totality of the circumstances test. *Id.*

Finally, the Trustee challenges the plain-language reading of § 707(b)(2)(A)(iii) as

15

contrary to the legislative intent behind BAPCPA to ensure that "those who can afford to repay some portion of their unsecured debts be required to do so." (Appellant's Br. at 13 quoting 151 Cong. Rec. S2470 (Mar. 10, 2005). Specific language in a statute trumps over the generally understood intent of Congress in enacting a statute, especially where there is no ambiguity in the language. *Mundy*, 2007 WL 620971 at *5. Unless the literal application of a statute will result in an interpretation demonstrably at odds with Congressional intent, the plain meaning of the legislation should be conclusive. *United States v. Ron Pair Enters. Inc.*, 489 U.S. 235, 242 (1989).

Contrary to the Trustee's viewpoint, the plain meaning of the statute is not at odds with Congressional intent. As even the Trustee recognizes (Appellant's Br. at 13), there are other legislative goals of the BAPCPA, such as creating a mechanical, standardized test so as to reduce the court's discretion in deciding whether to dismiss a case for abuse through application of the means test. Congress, in creating the means test, set out a mechanical procedure for identifying abuse through a specific formula to calculate a debtor's income and expenses. *Mundy*, 2007 WL 620971 at *4. That the means test relies for the most part on national or local standards for deductions, rather than the actual expenses of the debtor supports a legislative intent valuing the nondiscretionary, mechanical approximation of a debtor's financial picture above an accurate predication of the debtor's actual ability to pay. *Walker*, 2006 WL 1314125 at *6. In addition, the deduction of secured debt on property that the debtor intends to surrender does not undercut the goal of having debtors with disposable income pay their debts if they can: although the debtor may intend to surrender the collateral underlying her secured payments, they will still need to procure new housing arrangements, which will lead to the incurring of some level of

16

additional expense not calculated in the means test. *Mundy*, 2007 WL 620971 at *4. The deduction of monthly payments on property that the debtor intends to surrender also ensures efficiency in the bankruptcy process. The Bankruptcy Court need not revisit the means test if a debtor is able to negotiate a reaffirmation agreement with the creditor later in the process. *See Haar*, 2007 WL 521221. The Trustee's elevation of one legislative purpose—having debtors who can pay do so—above another—the standardized application of the means test—is not supported by the plain language of the statute or its overall context.

The court understands the logic behind the Trustee's argument from the policy perspective, but, to achieve that policy, the Trustee is imposing a contrary interpretation on the statute other than its plain meaning. The courts can only interpret the statute in accordance with its plain meaning and legislative intent. Policy decisions on the other hand must be made by Congress, not the courts. The dilemma that lurks behind the Trustee's arguments must be resolved through a Congressional amendment, rather than a court's interpretation of this statute.

Having determined that § 707(b)(2)(A)(iii) should be given its plain meaning and that the plain meaning is not contrary to Congressional intent, the court applies the statute to the circumstances of this case. At the time the petition was filed—the relevant time period—Randle's mortgage payments were scheduled as contractually due each month. These payments were still contractually due each month before and as of the filing of her Chapter 7

bankruptcy petition, even if Randle had not been paying these monthly mortgage payments and was in default. *Cf. In re Brandenburg*, No. 07-20244-svk, 2007 WL 1459402, * 1 (Bankr. E.D. Wisc. May 15, 2007) (contrasting the situation that case with a debtor who is in default and noting that "while the mortgage note may have been in default, the payments on the mortgage were still contractually due"). Nor does Randle's "Statement of Intention" to surrender the property change the contractually scheduled nature of her mortgage payments at the time of the filing of her petition; the Statement is not an actual surrender. *Longo*, 2007 WL 836762 at *4.

## CONCLUSION

Accordingly, the judgment of United States Bankruptcy Court Judge Carol A. Doyle in the United States Trustee's appeal of her decision (Dkt. No. 1) is affirmed. Judgment is entered in favor of debtor Ernestine Randle and against U.S. Trustee William T. Neary.

ENTER:

*James F. Holderman*
JAMES F. HOLDERMAN
Chief Judge, United States District Court

Date: July 20, 2007